# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Zahid N. Quraishi |
| | : | |
| v. | : | Mag. No. 20-14010 (ZNQ) |
| | : | |
| CHRISTOPHER DONOHUE | : | **CRIMINAL COMPLAINT** |

I, Curtis Fornarotto, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the United States Postal Service, Office of the Inspector General, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

Continued on the attached page and made a part hereof:

s/Curtis Fornarotto
Special Agent Curtis Fornarotto
United States Postal Service
Office of the Inspector General

Attested to by telephone pursuant to
FRCP 4.1(b)(2)(A) on May 6, 2020,
in the District of New Jersey

HONORABLE ZAHID N. QURAISHI
UNITED STATES MAGISTRATE JUDGE        Signature of Judicial Officer

## **ATTACHMENT A**

On or about March 2, 2020, in Monmouth County, in the District of New Jersey and elsewhere, the defendant,

CHRISTOPHER DONOHUE,

a United States Postal Service employee, did steal, abstract, and remove articles and things, namely, prescription drugs, from mail which had come into his possession, that were intended to be conveyed by mail and forwarded through or delivered from a post office or postal station established by authority of the Postmaster General or of the Postal Service.

In violation of Title 18, United States Code, Sections 1709 and 2.

## **ATTACHMENT B**

I, Curtis Fornarotto, a Special Agent with the United States Postal Service, Office of the Inspector General, having personally participated in an investigation of the conduct of defendant CHRISTOPHER DONOHUE ("DONOHUE"), and having spoken with other law enforcement officers and individuals, have knowledge of the following facts. Because this complaint is submitted for the limited purpose of establishing probable cause, I have not included all facts known to me concerning this investigation. The contents of documents and the actions, statements, and conversations of individuals referenced below are provided in substance and in part, unless otherwise indicated.

1. At all times relevant to this complaint, DONOHUE was employed by the United States Postal Service ("USPS"). Since on or about March 9, 2002, DONOHUE was employed as a mail carrier at a United States Post Office located in or around Belford, New Jersey (the "Belford USPO").

2. The Belford USPO services postal customers within its geographic area via multiple postal routes. These service areas include Leonardo, Belford, and Port Monmouth, New Jersey. Each of these service areas, in turn, had multiple, distinct postal routes, each of which was assigned to a designated mail carrier. At all times relevant to this complaint, Leonardo had 4 postal routes (the "Leonardo Routes") within its service area, Belford had 6 postal routes within its service area (the "Belford Routes"), and Port Monmouth had 4 postal routes within its service area (the "Port Monmouth Routes").

3. Beginning in or about March 2002 and at all times relevant to this complaint, DONOHUE was assigned to deliver mail to customers serviced by the Leonardo Route 2 postal route. At no time was DONOHUE assigned to deliver mail to customers located on the Belford Routes.

4. Beginning in or about January 2019, the Belford USPO received multiple complaints of missing prescription medication from customers serviced by the Belford USPO. All of the customers had been scheduled to receive prescription medication to their home addresses via the USPS. Several of these customers are veterans of the United States military, and receive their prescription medication through the Department of Veteran's Affairs ("VA") prescription service.

5. On multiple occasions between on or about February 23, 2019 and on or about March 2, 2020, surveillance cameras at the Belford USPO captured DONOHUE removing packages (the "Packages ") from shelves designated as a holding area for attempted deliveries of mail to customers whose addresses were serviced by mail carriers assigned to the Belford Routes. The shelves (the "Notice Left Shelves") hold mail for customers on the Belford Routes for whom a

notice was left when delivery could not be completed for lack of a customer signature. The Notice Left Shelves correspond only to the Belford Routes, and do not store mail for any customers serviced by carriers assigned to the Leonardo Routes or the Port Monmouth Routes. Accordingly, because he was not assigned to deliver mail on the Belford Routes, DONOHUE had no reason, in the course of his regular duties, to take custody of mail that had been placed on the Notice Left Shelves at the Belford USPO. The surveillance camera footage captured DONOHUE, on multiple occasions, removing Packages from the Notice Left Shelves. The Packages were similar in size, were all white in color, and visibly contained items that were consistent in shape and size of a prescription bottle.

6. On or about February 27, 2020, a VA-affiliated pharmacy sent a customer (a military veteran) a prescribed quantity of Tramadol (the "Prescription"), a schedule IV controlled substance, to his/her address on Belford Route 7 (the "Belford Address.") The mail carrier assigned to Belford Route 7 attempted delivery of the Prescription on or about February 29, 2020. The customer did not take delivery of the Prescription on that day and, accordingly, a notice was left at the Belford Address instructing that the Prescription could be picked up at the Belford USPO any time after March 2, 2020. Thereafter, the Prescription (which was contained in a Package as described in paragraph 5, above) was returned to the Belford USPO on or about February 29, 2020 at approximately 5:00 p.m., and it was placed on the Notice Left Shelves.

7. On or about March 2, 2020, at approximately 5:27 p.m., Belford USPS surveillance cameras captured DONOHUE removing the Prescription from the Notice Left Shelves. After removing the Prescription, DONOHUE proceeded to his mail sorting station within the Belford USPO. At approximately 5:28 p.m., DONOHUE removed the Prescription from his waistband area and placed it on a shelf in his sorting station. Seconds later, DONOHUE removed the Prescription from his sorting station shelf, placed it into his left pants pocket, and pulled his shirt over his pocket, obscuring the view of the Prescription. DONOHUE then left his sorting station. DONOHUE departed the Belford USPO for the day at approximately 5:40 p.m.

8. On or about March 3, 2020, the customer reported to Belford USPO to retrieve the Prescription, and was advised that the Prescription was no longer at the Belford USPO. The customer never received the Prescription.

9. On or about May 6, 2020, in connection with the investigation, law enforcement prepared a package (the "Prepared Package") containing a prescription bottle. The Prepared Package was addressed to a fictitious customer with an address on a Belford Route and had a return address label from a VA facility. The Prepared Package contained a prescription size bottle containing a quantity of inert pills. The Prepared Package was placed on the

Notice Left Shelves of the Belford USPO.  Law enforcement observed DONOHUE inspecting the location of the Prepared Package on the Notice Left Shelves.  DONOHUE punched his time card and left the Belford USPO at approximately 4:30 p.m.   At approximately 7:15 p.m. DONOHUE returned to the Belford USPO and law enforcement observed DONOHUE approach the Notice Left Shelves.  DONOHUE then proceeded to his sorting station with a package in his hand.  DONOHUE exited the Belford USPO at approximately 7:20 p.m. and entered his vehicle.

      10.   Thereafter, law enforcement officers arrested DONOHUE.  In DONOHUE'S possession, law enforcement officers found the components of the Prepared Package, including the prescription size bottle, the inert pills as well as an empty envelope.